UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARGARET E. MANNIS,              )
                                 )
            Plaintiff,           )
                                 )
v.                               )          No. 3:12-CV-619-TAV-CCS
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social Security,  )
                                 )
            Defendant.           )

## MEMORANDUM OPINION

This case is before the Court on the Plaintiff's Motion for Summary Judgment and

Memorandum in Support [Docs. 11, 12] and the Defendant's Motion for Summary

Judgment and Memorandum in Support [Docs. 18, 19]. The Plaintiff Margaret E.

Mannis seeks judicial review of the decision of the Administrative Law Judge ("the

ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of

Social Security ("the Commissioner").

The Plaintiff filed her application for a period of disability and disability insurance

benefits under the Social Security Act on August 25, 2009, alleging disability since July

27, 2008, due to multiple sclerosis, depression, migraines, and foot and knee pain. Her

application was denied initially and upon reconsideration. The Plaintiff then requested a

hearing, which was held before ALJ Joan A. Lawrence, in Knoxville, Tennessee,

on November 18, 2010. The Plaintiff was present and testified. The ALJ issued an

unfavorable decision on March 17, 2011, finding the Plaintiff capable of sedentary work. The Appeals Council denied the Plaintiff's request for review of that decision initially and upon reconsideration; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirement of the Social Security Act on September 30, 2009.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 27, 2008 through her date last insured of September 30, 2009.
>
> 3. Through the date last insured, the claimant had the following severe impairments; mild ms; bilateral knee osteoarthritis; bilateral plantar fasciitis with tarsal tunnel syndrome; migraine headaches; and obesity (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

2

7. The claimant was born on October 20, 1967 and was 41 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable jobs skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 27, 2008, the alleged onset date, through September 30, 2009, the date last insured (20 CFR 404.1520(g)).

[Tr. 20-28].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, the plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional

4

capacity and vocational factors (age, education, skills, etc.),
he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §
404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at
529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the
Commissioner must prove that there is work available in the national economy that the
claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999)
(citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is
disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the
ALJ applied the correct legal standards and whether the findings of the ALJ are supported
by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir.
2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the
correct legal standards and his findings are supported by substantial evidence in the
record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec.,
375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more
than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r
of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson

v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless. See Wilson, 378 F.3d at 546-47

6

On review, Plaintiff bears the burden of proving his entitlement to benefits. <u>Boyes</u> <u>v. Sec'y. of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v.</u> <u>Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    POSITIONS OF THE PARTIES

The Plaintiff raises three allegations of error. First, the Plaintiff asserts that the ALJ failed to properly weigh the opinions of treating physician David Brandes, M.D. [Doc. 12 at 8]. Second, the Plaintiff asserts that the ALJ's findings were not supported by the record as a whole. [<u>Id.</u> at 12]. Finally, the Plaintiff asserts that new evidence submitted to the Appeals Council after the ALJ had rendered her decision demonstrates that the Plaintiff was disabled prior to her date last insured. [<u>Id.</u> at 13].

The Commissioner responds that the ALJ properly weighed Dr. Brandes's opinions. [Doc. 19 at 4]. The Commissioner submits that the brief treating relationship between the Plaintiff and Dr. Brandes, coupled with Dr. Brandes's treatment notes which revealed no significant findings, demonstrated that Dr. Brandes's opinions regarding the Plaintiff's ability to work were not well supported. [<u>Id.</u> at 5-9]. The Commissioner also asserts that that ALJ's findings were supported by the record because the ALJ's decision was based upon all the relevant evidence within the record. [<u>Id.</u> at 11]. Last, the Commissioner asserts that additional evidence submitted to the Appeals Council was not new or material, and therefore should not be considered by the Court. [<u>Id.</u> at 13-16].

7

## V.  ANALYSIS

The Court will address Plaintiff's allegations of error in turn.

### A.  Evaluation of Dr. Brandes's Opinions

The Plaintiff contends that the ALJ failed to properly evaluate Dr. Brandes's opinions concerning her limitations and ability to do work.  [Doc. 12 at 8].  Specifically, the Plaintiff asserts that the ALJ erred in assigning "minimal weight" to Dr. Brandes's December 2009 opinion, arguing that the opinion was supported by objective medical evidence.  [Id. at 9].  The Plaintiff also asserts that the ALJ erred in assigning "no weight" to Dr. Brandes's October 2010 opinions.  [Id.].  Although the 2010 opinions were submitted a year after the Plaintiff's date last insured, the Plaintiff argues that these opinions should be considered because they were based upon medical tests and examinations that occurred prior to the Plaintiff's date last insured, they were consistent with the December 2009 opinion, and they were supported by the record as a whole. [Id.].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).  But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors:  length of treatment, frequency of examination, nature

8

and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight afforded to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

The Court will address Dr. Brandes's December 2009 opinion and then his October 2010 opinions to determine whether the ALJ properly evaluated each opinion.

### 1. December 2009 Opinion

On December 9, 2009, Dr. Brandes completed a form entitled Multiple Sclerosis Residual Functional Capacity Questionnaire in which he responded to a variety of short-answer and multiple choice questions. [Tr. 275-81]. Therein, Dr. Brandes opined that the Plaintiff had multiple sclerosis and suffered from symptoms including fatigue,

9

balance problems, numbness, sensory disturbance, pain, difficulty remembering, depression, emotional liability, difficulty solving problems, problems with judgment, and double or blurred vision. [Tr. 276]. Dr. Brandes identified "emotional factors" as contributing to the severity of the Plaintiff's symptoms and functional limitations. [Tr. 278]. Dr. Brandes further noted that the Plaintiff was incapable of even "low stress" jobs due to her fatigue, depression, and cognitive impairments. [Id.]. He also opined that during an 8-hour work day, the Plaintiff would be subject to the following limitations: she could sit for at least six hours and stand/walk for about two hours; she would require three to four unscheduled breaks which could last anywhere from 15 to 30 minutes and as long as 60 minutes at a time; she could occasionally carry or lift less than 10 pounds, rarely 10 pounds, and never more than 20 pounds; and she could occasionally twist, rarely bend, crouch, and climb stairs, and never climb ladders. [Tr. 279-80]. Dr. Brandes also opined that the Plaintiff's impairments would likely cause her to be absent from work more than four days per month. [Tr. 281].

The ALJ discussed Dr. Brandes's treatment notes as follows:

> The claimant began seeing neurologist Dr. Brandes in August 2009. When Dr. Brandes performed a neurological examination of the claimant at that time, the physician noted that the claimant cried frequently during the office visit but her neurological examination was <u>totally</u> unremarkable. When the claimant underwent a brain MRI in September 2009, there was chronic white matter lesions which did not show any evidence of progression compared to a prior study that was performed in December 2006. The radiologist noted that microvascular ischemia of demyelinating disease such as multiple sclerosis could not be excluded, but no acute or

10

enhancing lesions were seen. Dr. Brandes diagnosed the claimant with probable multiple sclerosis, mild. During office visits in November and December 2009, Dr. Brandes indicated that the claimant had been noncompliant with prescribed treatment, as she had stopped taking her prescribed anti-depressant on her own; she had not started B-12 injections which he had prescribed to her; and she had not started taking Neurontin, which he had prescribed to her, and in subsequent office visits, this physician also noted that the claimant had never started taking Cymbalta, though she had been given samples during a prior office visit; and that she was not taking any medication for multiple sclerosis at her choice (Exhibits 5F, 6F, and 9F).

[Tr. 25-26] (emphasis in the original).

The ALJ went on to summarize Dr. Brandes's December 2009 opinion and

ultimately assigned "minimal weight" to the opinion, reasoning that:

Dr. Brandes had only started treating the claimant in August 2009, and his own examination did not reveal any significant physical abnormalities. The brevity of Dr. Brandes treating relationship with the claimant detracts from the credibility of his opinion, and his own unremarkable findings during examination are not consistent with the level of limitation indicated in Dr. Brandes' opinion.

[Tr. 26].

The Plaintiff maintains that the weight afforded to Dr. Brandes's opinion is

unfounded by arguing that the opinion is supported by objective medical evidence,

namely, Dr. Brandes's treatment notes, the Plaintiff's September 2009 MRI and

laboratory results, and her overall medical history. [Doc. 12 at 9]. However, upon

review of the cited evidence, the Court agrees with the ALJ that the brief treating

11

relationship with the Plaintiff, in addition to Dr. Brandes's own unremarkable findings, provided "good reason" for affording minimal weight to Dr. Brandes's opinion.

Prior to his December 2009 opinion, Dr. Brandes had examined the Plaintiff on four separate occasions beginning on August 26, 2009. [Tr. 258-61]. During this examination, Dr. Brandes conducted a neurological evaluation of the Plaintiff and gave a diagnostic impression that the Plaintiff suffered from probable multiple sclerosis, migraines, myofascial pain, depression, and plantar fasciitis. [Tr. 261]. Dr. Brandes noted that the Plaintiff had previously been diagnosed with multiple sclerosis but had never sought treatment for it until she began seeing him. [Tr. 258]. Dr. Brandes also remarked that the Plaintiff suffered from depression since 2003, but that she had not taken any medication for it. [Tr. 259]. At the conclusion of the examination, the only medication prescribed to the Plaintiff during her August visit was Lexapro for depression. [Tr. 261].

On September 3, 2009, the Plaintiff underwent a spine and brain MRI. [Tr. 247-49]. Results for the Plaintiff's thoracic spine revealed "two foci of suspicious cord signal seen which could be indicative of multiple sclerosis plaque." [Tr. 247]. The cervical spine MRI, however, showed "no frank neural impingement" and "no intrinsic neural abnormalities." [Id.]. In addition, the Plaintiff's brain MRI showed "[c]hronic white matter lesions which do not show any evidence of progression since prior examination of December 2006." [Tr. 249]. While no acute or enhancing lesions were seen, multiple sclerosis could not be excluded. [Id.].

12

The Plaintiff returned to Dr. Brandes on September 18, 2009. [Tr. 256]. The Plaintiff reported experiencing occasional foot numbness, fatigue, and leg pain but had not experienced any new symptoms since her last visit, including no migraines in about six weeks. [Id.]. The Plaintiff was prescribed Copaxone for multiple sclerosis, Wellbutrin for depression, and was advised that the she should begin monthly B-12 injections. [Id.].

However, on November 11, 2009, Dr. Brandes noted that the Plaintiff reported that she was "not ready" to start Copaxone nor had she started her B-12 injections. [Tr. 254]. Although the Plaintiff had started taking Wellbutrin, which was noted as improving her depression [Tr. 254], Dr. Brandes noted on December 9, 2009, that the Plaintiff reported that she had stopped taking it because she was "crying a lot." [Tr. 252]. Dr. Brandes noted that "in retrospect, [her crying] may have had to do with a family problem." [Id.]. The December 9 treatment notes also reveal that Dr. Brandes had previously recommended Neurontin to the Plaintiff but that she had not started the medication. [Id.].

Based upon the foregoing, the Court cannot agree with the Plaintiff's contention that the ALJ's assignment of minimal weight to Dr. Brandes's December 2009 opinion was unfounded. "In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling

13

pain." <u>Strong v. Soc. Sec. Admin.</u>, 88 Fed. App'x 841, 846 (6th Cir. 2004). The Court finds this to be the case here.

While the Plaintiff maintains that she was diagnosed with multiple sclerosis in 2006, and suffered from depression since at least 2003, the record is void of any medical evidence dated prior to August 2009 that confirms the existence, extent, or severity of the Plaintiff's conditions. To be sure, Dr. Brandes's treatment notes state that although the Plaintiff had suffered from both, she had not sought treatment for either until she began seeing him. Although the Plaintiff's September 2009 MRI suggests the possibility of multiple sclerosis, a diagnosis alone "says nothing about the severity of the condition." <u>Higgs v. Bowen</u>, 880 F.2d 860, 863. In addition, once the Plaintiff began seeking treatment from Dr. Brandes, Dr. Brandes's treatment notes reveal that the Plaintiff failed to heed his treatment advice on numerous occasions by failing to take medication prescribed to her for aliments the Plaintiff alleges are the cause of her disabling condition.

Accordingly, the Court finds that the ALJ properly evaluated Dr. Brandes's December 2009 opinion, and therefore, the Plaintiff's argument in this regard is not well-taken.

### 2. October 2010 Opinions

On October 29, 2010, Dr. Brandes completed two forms entitled Medical Assessment of Ability to Do Work-Related Activities which again required Dr. Brandes to respond to short-answer and multiple choice questions. [Tr. 299-300, 301-02]. The

14

first form evaluated the Plaintiff's physical ability to do work-related activities while the latter evaluated the Plaintiff's mental ability to do the same. [Id.].

In the physical evaluation, Dr. Brandes essentially reiterated the same findings that he had opined in his December 2009 opinion in regards to the Plaintiff's capability to stand, walk, sit, and her overall postural limitations. [Tr. 299-300]. Dr. Brandes added that the Plaintiff's impairments affected her ability to feel, push or pull, and noted environmental restrictions which included heights, moving machinery, temperature extremes, and humidity. [Tr. 300].

As to the mental evaluation, Dr. Brandes checked a box labeled "good" in regards to the Plaintiff's ability to follow work rules, simple job instructions, and maintain her personal appearance. [Tr. 301-02]. He also checked a box labeled "fair" in describing her ability to relate to co-workers, deal with the public, use judgment with people, function independently, maintain attention and concentration, follow detailed, but not complex, job instructions, relate predictably in social situations, and demonstrate reliability. [Id.]. Finally, Dr. Brandes checked a box labeled "poor" in regards to the Plaintiff's ability to interact with supervisors, deal with work stresses, carry out complex job instructions, and behave in an emotionally stable manner. [Id.]. Dr. Brandes based his opinion on the Plaintiff's cognitive impairments and brain MRI. [Id.].

The ALJ found that the physical assessment essentially limited the Plaintiff to sedentary work, while her mental assessment made her incapable of performing even unskilled work. [Tr. 27]. The ALJ explained that "[n]o weight is given to these

15

assessments with respect to the claimant's work-related functioning prior to September 30, 2009, when she was last insured for benefits, as they were rendered more than one year after that date." [Tr. 27].

The Sixth Circuit Court of Appeals has held that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." Strong, 88 Fed. App'x at 845 (citation omitted). To be relevant, the post-dated evidence "must relate back to the claimant's condition prior to the expiration of her date last insured." Wirth v. Comm'r of Soc. Sec., 87 F. App'x 478, 480 (6th Cir. 2003) (citing King v. Sec'y of Health and Human Servs., 896 F.2d 204, 205-06 (6th Cir. 1990)). Moreover, the post-dated evidence must do more than confirm a diagnosis or signal that the claimant suffered from a condition; the evidence must be demonstrative of the claimant's actual limitations and ability to do work during the relevant time period. See Higgs, 880 F.2d at 863.

The Plaintiff argues that the October 2010 opinions relate back to the relevant time period because Dr. Brandes based his opinions on the Plaintiff's abnormal brain and spine MRIs which took place in September 2009, and the opinions are consistent with Dr. Brandes's December 2009 opinion. [Doc. 12 at 9]. However, the ALJ noted in her discussion of the December 2009 opinion that the MRI, along with Dr. Brandes's treatment notes, did not reveal any significant abnormalities to support the severity of the Plaintiff's impairments as opined by Dr. Brandes in 2009. The Court has credited the

ALJ's reasoning, as previously discussed, and therefore finds that the ALJ likewise did not err in the weight afforded to Dr. Brandes's October 2010 opinions.

Additionally, the Court observes that Dr. Brandes's post-December 2009 treatment notes,[1] which the Court assumes were also relied upon by Dr. Brandes in forming his October 2010 opinions, further undermine the severity of the Plaintiff's conditions. In particular, the Court notes that the Plaintiff continued to follow Dr. Brandes's instructions and recommendations on an inconsistent basis. For example, during the Plaintiff's examination with Dr. Brandes in April 2010, the Plaintiff reported missing her last B-12 injection. [Tr. 292]. Dr. Brandes opined that the Plaintiff's reports of decreased memory over time seemed worse when she missed her B-12 injections. [Id.]. Dr. Brandes's June 2010 treatment notes also reveal that the Plaintiff was not taking her medication for multiple sclerosis "at her choice." [Tr. 290]. Finally, Dr. Brandes noted that he had given the Plaintiff samples of Cymbalta to treat her depression because her Wellbutrin coverage had been decreased by her insurance. [Id.]. However, when the Plaintiff returned in September 2010, Dr. Brandes noted that the Plaintiff never tried the medication. [Tr. 288].

---

[1] After Dr. Brandes rendered his December 2009 opinion, but prior to his October 2010 opinions, Dr. Brandes examined the Plaintiff on four additional occasions: February 5, 2010, April 7, 2010, June 23, 2010, and September 23, 2010. [Tr. 287-97].

Accordingly, the Court finds that the ALJ did not err is assigning "no weight" to Dr. Brandes's October 2010 opinions.[2]

## B. The ALJ's Findings are Supported by the Record

The Plaintiff also argues that the ALJ's decision was unsupported by the record as a whole for two reasons. [Doc. 12 at 12]. First, the Plaintiff argues that the ALJ erroneously relied on two state agency determinations because the determinations were not rendered by medical consultants. [Id.]. Second, the Plaintiff asserts that the ALJ's characterization of the Plaintiff's clinical examinations as "benign" or only showing "mild" findings is directly at odds with Dr. Brandes's treatment notes and conclusions. [Id.] As a result, the Plaintiff maintains that a physician, rather than the ALJ, was in a better position to interpret the results of the Plaintiff's examinations and clinical tests, and, therefore, the ALJ should have requested a consultative examination in order to address any perceived inaccuracies contained in the record. [Id. at 13].

The Court finds the Plaintiff's arguments unavailing. First, the Court notes that the state agency determinations the Plaintiff is referring to are a form entitled "Explanation of Determination" that accompanied the Social Security Administration's notice denying the Plaintiff's initial application for disability and her request for

---

[2] To the extent it could be argued that the ALJ should have provided a similar analysis as the Court has done in explaining why the post-dated opinions are not relevant, any error on the part of the ALJ was harmless. The Court has found that the opinions do not shed any further light on the Plaintiff's limitations as they existed prior to her date last insured, and therefore, a remand would not change the outcome of this case. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (holding that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

18

reconsideration. [Tr. 44-47, 52-54]. The notices stated that the Administration's decision to deny the Plaintiff's claim was made by agency doctors and staff. [Tr. 44, 52]. Thus, although it is unclear as to the extent that the determinations referred to in the ALJ's decision were based upon the opinions of medical consultants, the Court finds that the determinations were made, at least in part, by medical consultants. Regardless, the Court finds substantial evidence supports the ALJ's decision for other, more significant reasons as discussed below and set forth in the ALJ's opinion.

Second, the Court finds that the ALJ was not required to order a consultative examination in this case. An ALJ need only order a consultative examination when "the record establishes that such an examination is *necessary* to enable the [ALJ] to make the disability decision." Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986) (quoting Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977) (emphasis in original)); 20 C.F.R. § 416.917. Moreover, the ALJ is responsible for evaluating medical evidence in the record and is not bound by the opinions or theories of a medical expert, but may draw his own inferences from the evidence. Rudd v. Comm'r of Soc. Sec., No. 12-6136, 2013 WL 4767020, at *7 (6th Cir. Sept. 5, 2013) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)); McCain v. Dir., OWCP, 58 Fed. App'x 184, 193 (6th Cir. 2003). When weighing medical expert opinions, however, an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009) (quotation omitted).

19

Here, the Plaintiff seems to assert that a consultative examination was necessary because the ALJ must have misread or misinterpreted the Plaintiff's clinical examinations since the ALJ arrived at a different conclusion than that reached by Dr. Brandes. However, the Plaintiff ignores the fact that in addition to discussing Dr. Brandes's treatment notes and opinions, the ALJ also set forth a detailed discussion of the Plaintiff's overall medical history, including treatment notes by other medical sources, and made a credibility finding regarding the Plaintiff's own allegations of pain before arriving at her conclusion that the Plaintiff's condition was not as limiting as she claimed or as opined by Dr. Brandes.

For example, the ALJ noted that "[t]here are no records in evidence of any medical treatment prior to January 2008, which is inconsistent with [the Plaintiff's] assertion that she became disabled in July 2008." [Tr. 25]. The ALJ went on to explain that treatment notes within the record did not show that the Plaintiff suffered from any neurological abnormalities until she began seeing Dr. Brandes in August 2009. [Id.]. In addition, although Plaintiff had complained to Dr. Brandes that she suffered from memory loss and depression, the ALJ observed that treatment records revealed that the Plaintiff never underwent memory tests or had demonstrated cognitive impairments during her examinations. [Tr. 25-26].

In reviewing other medical evidence, the ALJ discussed the Plaintiff's treatment for leg, knee, and foot pain. The ALJ noted that the Plaintiff had received injections for knee pain, and that she had been diagnosed with mild medial compartment narrowing and

20

some patellofemoral osteoaristis in July 2008, and bilateral plantar fasciitis with tarsal tunnel syndrome in April 2009. [Id.] The ALJ remarked that prior to the Plaintiff undergoing physical therapy for her knee, treatment notes reveal that the Plaintiff was "ambulating independently with an antalgic gait, range of motion was within normal limits in her feet bilaterally, and manual muscle testing was essentially normal." [Id.]. Moreover, the Plaintiff underwent a nerve conduction study of her bilateral lower extremities in August 2009. [Id.]. Results from the study showed that they were within normal limits and only a modest suggestion of a left SI radiculopathy existed. [Id.].

The ALJ went on to discuss the credibility of the Plaintiff. The Plaintiff testified before the ALJ that she had to quit her last job in July 2008 because of problems with confusion and memory. [Tr. 36]. The ALJ noted, again, that the record was void of the Plaintiff seeking any treatment for cognitive problems until she began seeing Dr. Brandes in August 2009. [Tr. 26]. The Plaintiff also complained of migraines during the hearing, testifying that they lasted up to 72 hours. [Tr. 37]. The ALJ observed that no evidence within the Plaintiff's medical records supported her allegation that she experienced such disabling headaches. [Tr. 26]. The ALJ also discredited the Plaintiff's claim that she had problems balancing, noting that "Dr. Brandes did not indicate that the claimant needed a hand-held assistive device to help her with standing or with ambulation." [Id.]. Last, the ALJ took issue with the Plaintiff's repeated failure to heed Dr. Brandes's medical advice or recommendations on multiple occasions as evidence that the Plaintiff was not as limited as she claimed. [Id.].

Based upon the foregoing, the Court finds that substantial evidence supports the ALJ's conclusion that the Plaintiff is not disabled. The ALJ may, and in this case did, consider all the relevant evidence in the record, including medical and nonmedical evidence, in making a disability determination. See 20 C.F.R. § 404.1545(e). The Plaintiff has the burden of showing that "objective medical evidence confirms the severity of the alleged pain, or that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." Hibbard v. Astrue, 537 F. Supp. 2d 867, 875 (E.D. Ky. 2008) (citing 20 C.F.R. § 404.1529(b)). The Court finds that the Plaintiff has failed to meet such burden.

Accordingly, the Plaintiff's allegation of error is not well-taken.

## C.     New Evidence

Last, the Plaintiff argues that additional evidence submitted to the Appeals Council is new and material, warranting a remand in this case. [Doc. 12 at 13]. The additional evidence consists of medical records from Internal Medicine West, Dr. Brandes, and Janetta Jamerson, Ph.D., dated January 2011 through May 2012, and an opinion rendered by Dr. Brandes on July 13, 2012. [Id. at 13-14.].

The Court may not consider new evidence in its substantive review of the ALJ's denial of benefits. Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). However, pursuant to 42 U.S.C. § 405(g), the Court may "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior

22

proceeding." Id. (quoting Cline v. Comm'r of Soc. Sec. 96 F.3d 146, 148 (6th Cir. 1996)). This is referred to as a "sentence six remand." Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). The proponent of the new evidence bears the burden of proving all three elements. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 589 (6th Cir. 2005).

Evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Foster, 279 F.3d at 357 (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)). "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." Pickard v. Comm'r of Soc. Sec., 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting Elliott v. Apfel, 28 F. App'x 420, 424 (6th Cir. 2002)).

Evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" Foster, 279 F.3d at 357 (quoting Sizemore, 865 F.2d at 711). In addition, "[e]vidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ." Pickard, 224 F. Supp. 2d at 1171.

Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster, 279 F.3d at 357. "The mere fact that the evidence at issue was not in existence at the time of the ALJ's decision does not establish good cause." Pickard, 224 F. Supp. 2d at

1171.  Further, "this circuit has taken a harder line on the good cause test."  <u>Oliver v.</u>
<u>Sec'y Health & Human Servs</u>., 804 F.2d 964, 966 (6th Cir. 1986).

The Court will analyze whether the Plaintiff has shown that the additional
evidence is new, material, and good cause exist for not submitting the evidence at the
administrative level by first addressing the medical records dated January 2011 through
May 2012, from Internal Medicine West, Dr. Brandes, and Dr. Jamerson, and then
addressing Dr. Brandes's July 2012 opinion.

**1.  Medical Records dated January 2011 through May 2012**

The Plaintiff submits additional evidence from three separate medical sources:  (1)
treatment notes from Dr. Brandes dated January 2011 through November 2011; (2)
treatment notes from Internal Medicine West dated March 2011 through January 2012;
and (3) a form entitled Mental Status/Observation completed by Dr. Jamerson on April
21, 2012.  [Tr. 443-47, 448-91, 492-99].  The Plaintiff argues that this additional
evidence not only demonstrates that she is disabled, but also shows that her allegation of
disability has remained consistent throughout the record.  [Doc. 12 at 14].

Dr. Brandes's treatment notes reveal that the Plaintiff received additional
treatment from him in January, May, August, and November 2011.  [Tr. 435, 438, 440,
447].  During the Plaintiff's January and May visits, the Plaintiff reported experiencing
migraines, but neither the frequency nor the severity of her migraines were documented.
[Tr. 438, 440].  The Plaintiff also complained of an "electricity feeling" down her back
and across her shoulder blades during her January visit and reported dizziness during her

24

May visit. [Tr. 440, 447]. Dr. Brandes's treatment notes also reveal that the Plaintiff appeared to continue taking her medication on an inconsistent basis. [Tr. 438, 440, 447]. Specifically, during her January visit, Dr. Brandes noted that she remained off of her multiple sclerosis medication at her choice. [Tr. 440]. In May, Dr. Brandes noted that he had previously given the Plaintiff samples of Maxalt to treat her migraines but that she had not taken it because she had lost the samples. [Tr. 438]. Dr. Brandes provided the Plaintiff with new samples, but noted during the Plaintiff's subsequent visit in August that she still had not started the medication. [Tr. 438, 447]. Dr. Brandes also noted that the Plaintiff was not taking many of her other medications due to co-pay costs, and she had stopped taking Wellbutrin after she had developed a rash. [Tr. 438, 447].

The Plaintiff also submits medical records from Internal Medicine West, dated March 2011 through January 2012, in which the Plaintiff was treated almost a dozen times for several different ailments. [Tr. 448-91]. In particular, the Plaintiff received treatment for cold symptoms, an upper respiratory infection, and a urinary tract infection. [Tr. 451, 454, 460, 463, 466, 470, 472, 475].

Finally, the Plaintiff submitted a form entitled Mental Status/Observation completed by Dr. Jamerson on April 21, 2012. [Tr. 493-99]. Therein, Dr. Jamerson opined that the Plaintiff suffered from mood disorder due to multiple sclerosis, generalized anxiety disorder, and panic disorder. [Tr. 499].

The Court finds that the Plaintiff has failed to carry her burden in showing that these additional medical records warrant a sentence six remand. In fact, the Plaintiff not

25

only failed to discuss any of the content or information within the medical records, the Plaintiff failed to set forth any argument whatsoever as to how these records are new, material, or why good cause exists for not presenting them during administrative proceedings. [Doc. 12 at14]. A review of the records by the Court, however, confirms that a remand is unwarranted.

Although Dr. Brandes's treatment notes indicate that the Plaintiff continued to suffer from conditions that had been treated prior to the Plaintiff's date last insured, the additional evidence consisted of the Plaintiff's self-reported symptoms and her documented failure, whether willingly or due to co-pay costs, to stay on medication prescribed to her. In other words, the additional treatment notes do not provide objective evidence that the Plaintiff became disabled prior to her date last insured. The treatment notes are, at best, duplicative of Dr. Brandes's earlier treatment notes which have already been discussed and evaluated by the ALJ. Thus, the Court finds that this additional evidence is neither new nor material.

In regards to the treatment notes from Internal Medicine West, the Court is unable to comprehend, and again the Plaintiff has not even attempted to show, how medical records documenting treatment for cold symptoms and urinary tract infections might result in a different conclusion than that reached by the ALJ. Therefore, the Court finds that the records submitted from Internal Medicine West are likewise immaterial to the Plaintiff's claim.

Finally, the Court finds that the Plaintiff has failed to show good cause of why the evaluation completed by Dr. Jamerson was not submitted to the ALJ during the administrative proceedings. In order to show good cause, the claimant must provide a valid reason for his or her failure to obtain evidence prior to the hearing. Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (6th Cir. 1984). Here, the Plaintiff testified before the ALJ in November 2010, that she had suffered from emotional lability and mood swings since at least 2007 or 2008. [Tr. 40]. Yet, the Plaintiff waited until 2012, to obtain Dr. Jamerson's opinion and now offers the Court no justification or explanation as to why she did not obtain this evaluation at the administrative level. Because the burden of proof is placed on the Plaintiff to demonstrate that a sentence six remand is warranted, the Court will not speculate whether good cause exist when the Plaintiff fails to make any kind of showing. Accordingly, the Court finds that good cause does not exist.

### 2.    Dr. Brandes's July 2012 Opinion

Finally, the Plaintiff submits an opinion rendered by Dr. Brandes on July 13, 2012, in which he opined that the Plaintiff's symptoms and limitations expressed in his December 2009 opinion have existed since approximately January 1, 2006.[3] [Tr. 506].

---

[3] The Plaintiff argues that the Appeals Council's decision indicates that they did not consider Dr. Brandes's July 2012 opinion because it was not listed on the "AC Exhibit List" attached to the Appeals Council's decision. [Doc. 12 at 14]. However, as pointed out by the Commissioner, Dr. Brandes's opinion was not render until *after* the Appeals Council had rendered its initial denial to review the ALJ's decision which was on June 28, 2012. [Tr. 9-14]. Dr. Brandes rendered his opinion the following month which was then considered by the Appeals Council upon reconsideration on October 24, 2012. [Tr. 2, 4-5].

Regardless of whether Dr. Brandes's opinion is new evidence, the Court finds that the Plaintiff has failed to demonstrate how the opinion is material or why there is good cause for not presenting Dr. Brandes's opinion during the administrative proceedings.

The Plaintiff argues that the opinion is material because "it further supports the allegations of disability and her overall level of functioning prior to September 30, 2009." [Doc. 12 at 14]. The Plaintiff's argument essentially restates what material evidence is without providing any explanation as to how Dr. Brandes's opinion would lead to a different result than the one reached by the ALJ. Fatal to the Plaintiff's argument is that Dr. Brandes's July 2012 opinion is supported by no objective medical evidence. As the ALJ has explained, and this Court has agreed, the record is simply void of any clinical tests, imaging, examinations, and treatment notes prior to January 2008. In fact, the medical records do not document any treatment for complaints or diagnosis of multiple sclerosis, depression, or migraines until the Plaintiff began seeing Dr. Brandes in August 2009. Therefore, the Court finds that there is no evidence of record supporting Dr. Brandes's opinion that the Plaintiff has been disabled since 2006.

The Court notes that because the Plaintiff bears the burden of showing that a sentence six remand is appropriate, it is incumbent on the Plaintiff to show that the additional evidence submitted demonstrates a reasonable possibility that such evidence might lead to a different conclusion. See Foster, 279 F.3d at 357 (stating that "the burden of showing that a remand is appropriate is on the claimant") (citing Oliver v. Sec'y of Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986)). Because the Plaintiff has

offered no explanation to show how Dr. Brandes's July 2012 opinion is material, the Court finds that it is not.

Finally, the Plaintiff asserts that good cause exist because now that he has treated the Plaintiff for almost three years, Dr. Brandes is in the best possible position to render an opinion that the Plaintiff became disabled prior to her date last insured. [Doc. 12 at 14].

The Court is not persuaded. "The mere fact that the evidence at issue was not in existence at the time of the ALJ's decision does not establish good cause." Pickard, 224 F. Supp. 2d at 1171. Moreover, the only other evidence the ALJ did not consider from Dr. Brandes at the time the ALJ issued her decision were the treatment notes dated January through November 2011 (as discussed above). Those additional treatment notes do not reveal any information or findings that would support the conclusion that the Plaintiff's limitations reach as far back as January 2006. Therefore, the Court agrees with the Commissioner that the Plaintiff has failed to explain how the additional treating time with Dr. Brandes (since his December 2009 opinion) provides further insight or evidence into the Plaintiff's limitations prior to her date last insured.

## VI. CONCLUSION

Based upon the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 10**] is **DENIED** and the Commissioner's Motion for Summary Judgment [**Doc. 18**] is **GRANTED**.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE